AO 106 (Rev. 04/10) Application for a Search Warrant                     AUTHORIZED AND APPROVED/DATE: s/David Nichols 1/5/2024

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )          Case No.  MJ-24-17-STE
                                               )
In The Matter of the Search of Information Associated )
With the Cellular Device Assigned Call Number )
(580) 614-1699  In the Custody or Control of AT&T )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922 (g)(1) | Felon in Possession of a Firearm |

The application is based on these facts:
See attached Affidavit of Special Agent James Wren, Federal Bureau of Investigation, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

James Wren, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Jan 5, 2024**

*Judge's signature*

City and state:  Oklahoma City, Oklahoma                 SHON T. ERWIN, U.S. Magistrate Judge
                                                         *Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (580) 614-1699 IN THE CUSTODY OR CONTROL OF AT&T | Case No. MJ-24-17-STE<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, James Wren, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned with call number **(580) 614-1699** (the "**Subject Account**") that is in the custody or control of **AT&T**, a wireless communications service provider that accepts process at **National Compliance Center, 11760 US Hwy 1, Suite 300, North Palm Beach, FL 33408**. As a provider of wireless communications service, **AT&T** is a provider of "electronic communications service," as defined in 18 U.S.C. § 2510(15).

2. The information to be searched is described in the following paragraphs and in **Attachment A**. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require **AT&T** to disclose to the government the information further described in Section I of **Attachment B**. Upon receipt of the information described in Section I of **Attachment B**,

government-authorized persons will review the information to locate the items described in Section II of **Attachment B**.

3. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definition of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act, *see* 18 U.S.C. §§ 3121–3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute, including a certification from an attorney for the government that the information likely to be obtained by the requested pen register and trap-and-trace device is relevant to an ongoing criminal investigation. *See* 18 U.S.C. § 3123(b)(1). That certification is attached as **Attachment C**.

4. In sum, this affidavit is made in support of an application for three distinct items: (1) a pen register and trap-and-trace device on the **Subject Account**, pursuant to 18 U.S.C. § 3121–3127; (2) a "ping" on the **Subject Account**, pursuant to 18 U.S.C. § 2703 and Fed. R. Crim. P. 41(c); and (3) an order for historical and prospective cell site data for the **Subject Account**, pursuant to 18 U.S.C. § 2703(d).

5. I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") (the Investigating Agency) since 2019. In this capacity, my responsibilities include the investigation of possible violations of federal law, including the investigation of felons in

possession of firearms. During my career, my investigations have included the use of various surveillance techniques and the execution of various search, seizure, and arrest warrants.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 922(g)(1) (Target Offense(s)) have been committed by **Joshua William NEALIS**. There is also probable cause to search the information described in **Attachment A** to assist and aid in the apprehension of NEALIS as further described in **Attachment B**.

8. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. §§ 2711 & 3127. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. §§ 2711(3)(A)(i) & 3127(2)(A)(i).

## **PROBABLE CAUSE**

9. The United States, including the FBI, is conducting an investigation of **Joshua William Nealis (NEALIS)**.

10. Based on the facts set forth in this affidavit and the matters in the Court's records, there is probable cause to believe that NEALIS violated 18 U.S.C. § 922 (g)(1) – Felon in Possession of a Firearm.

11. I interviewed Kandice Nelson on September 13, 2023. Nelson knows NEALIS through her husband Blake Caddick, who lived with NEALIS at the SUBJECT PREMISES until approximately October 2023. Nelson told me she had been at the SUBJECT PREMISES – where NEALIS lives – three weeks prior to the interview. Nelson was there to speak to her husband Blake Caddick. While there, Nelson almost stepped on a rattlesnake which caused NEALIS to go inside the SUBJECT PREMISES, retrieve a shotgun, and shoot the snake.

12. I interviewed Pamela Wevers, NEALIS' ex-girlfriend, on September 13, 2023. Wevers confirmed NEALIS was living at the SUBJECT PREMISES. Wevers described the SUBJECT PREMISES as a large, barn-type structure that has a room where livestock medicine was kept (the vet room), a kitchen, an open living space downstairs, and an open living space upstairs. The open living space downstairs has a bunk bed and a pull-out couch.

13. Wevers said she has seen NEALIS with rifles and shotguns on multiple occasions. Wevers stated NEALIS had a rifle at the SUBJECT PREMISES in July 2023. NEALIS had the rifle stored in a cabinet at SUBJECT PREMISES, in the vet room. Wevers also saw NEALIS use a shotgun on a separate occasion in July 2023 to hunt for coyote. Wevers was last at SUBJECT PREMISES at the beginning of August 2023. Wevers stated NEALIS habitually carries firearms and knows he is not supposed to. Wevers stated NEALIS often purchased firearms from the Big Red Pawn Shop in Clinton, Oklahoma, with help from Tate Davidson – whom he knows from Thomas, Oklahoma. NEALIS would pick out firearms and Tate Davidson would purchase them in his name. I

4

have not followed up regarding the Big Red Pawn Shop due to this investigation. Wevers stated NEALIS drives all of Daryl Wichert's shop trucks but the newer, white Ford F-250 – which has an external diesel tank on its flatbed – is a non-work truck and is the main truck NEALIS drives as a personal vehicle.

14. Wevers stated that she knew Joshua Doyle, Blake Caddick, Paul Owens, and Alex Medina used to live with NEALIS at the SUBJECT PREMISES.

15. I interviewed Savannah Hrenchir on December 12, 2023. Hrenchir was a friend of NEALIS and former coworker of NEALIS at the SUBJECT PREMISES. She confirmed NEALIS sleeps on a bed located in the open living space on the bottom level of SUBJECT PREMISES. Hrenchir confirmed NEALIS routinely drives the white Ford F-250 described by Wevers. Hrenchir also stated that NEALIS keeps a black .308 scoped rifle, a .22 lever action rifle, a .22 bolt action rifle, a shotgun, and ammunition, in a cabinet in the vet room at the SUBJECT PREMISES.

16. Hrenchir made several cellphone videos of NEALIS with the black .308 scoped rifle. Hrenchir provided me with two videos, which show NEALIS in possession of a black .308 scoped rifle. The first video was taken on December 3, 2023, at approximately 7:30 a.m. In the video, NEALIS is driving his white F-250 pick-up with the black .308 lying next to him in the driver's seat. The second video – taken on November 5, 2023 – shows NEALIS shooting at a deer through the white F-250's driver door window with the black .308 scoped rifle. The following are still shots from the referenced videos:



17.     Savannah Hrenchir last stayed the night at the SUBJECT PREMISES on Thursday, December 7, 2023. Hrenchir stated that the only person that lives with NEALIS at this time is Joshua Doyle. Doyle stays with NEALIS only when Doyle is not at his girlfriend's house in Enid, Oklahoma. Alex Medina had a seizure and is wheelchair bound. As a result, Medina moved out of the SUBJECT PREMISES to reside with his mother. Blake Caddick moved out of the SUBJECT PREMISES in approximately October 2023 due to being fired.

18.     On December 4, 2023, NEALIS called Major County Sheriff's Office to report drug crimes. He left a message with the on-duty dispatcher and stated that a deputy could reach him at (580) 614-1699 – the number associated with the **Subject Account**.

6

Major County Deputy Matt Marriott contacted NEALIS using the **Subject Account** on December 4, 2023, to follow up on the information NEALIS wanted to provide. Deputy Marriott had further contact with NEALIS using the **Subject Account** on December 5th, 7th, and 8th of 2023.

19. Based on my review of NEALIS's criminal history I believe him to be a prohibited person. He has multiple felony convictions which include Dewey County criminal case CF-2011-0050, wherein he was convicted of Concealing stolen property on August 22, 2011 and ordered to serve two years in custody of the Department of Corrections.

20. I have concluded that NEALIS is using the **Subject Account** based on the information set forth above.

21. In my training and experience, I have learned that **AT&T** is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be ten (10) or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does

7

not necessarily serve every call to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

22.     Based on my training and experience, I know that **AT&T** can collect cell-site data about the **Subject Account**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; (5) the cell tower roundtrip network measurements from tower to device and back to tower, commonly referred to as Timing Advance data; and (6) the duration of the communication. I also know that wireless providers such as **AT&T** typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

23.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International

8

Mobile Equipment Identity ("IMEI"). The unique identifiers—as transmitted from a cellular device to a cellular antenna or tower—can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

24. Based on my training and experience, I know wireless providers such as **AT&T** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as **AT&T** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may assist in locating and apprehending **NEALIS**. In my training and experience, this information may also constitute evidence of the crimes under investigation because the information can be used to identify the **Subject Account**'s user or users and may assist in the identification of co-conspirators.

25. Based on my training and experience, the combination of both historical and prospective location information is helpful in locating individuals. The historical location information from cellular phones can help establish a pattern of life, while prospective location information—including cell-site information, phone pings, and timing advance measurements/distance-to-tower measurements—can help provide more precise real-time

9

information regarding the location of the **Subject Account's** user. To help ensure that **Nealis** is located, I am requesting precise location information for the next ten (10) days for the **Subject Account**.

## AUTHORIZATION REQUEST

26. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in **Attachment A** for each communication to or from the **Subject Account**, without geographic limit, for a period of ten (10) days pursuant to 18 U.S.C. § 3123(c)(1).

27. I further request, pursuant to 18 U.S.C. § 2703(b)(1)(A), that the Court find that the government is not required to provide notice of this warrant to the subscriber, customer, or person who was monitored. I also request, pursuant to 18 U.S.C. § 3123(d), that **AT&T** be ordered not to disclose to the listed customer or any other person the existence and/or use of the pen register and trap-and-trace device sought herein. Additionally, there is reasonable cause to believe that providing immediate notification of the warrant to the subscriber, customer, or person who is being monitored may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber, customer, or user of the **Subject Account** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, and flee from prosecution. *See* 18 U.S.C. § 2705(a)(2). Therefore, I request that the Court order **AT&T** not to notify any other

person of the existence of this warrant and order for a period of one month from the date the requested warrant is issued, except that the service provider may disclose this warrant and order to an attorney for the service provider for the purpose of receiving legal advice. As further specified in **Attachment B**, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

28.     I further request that the Court direct **AT&T** to disclose to the government any information described in Section I of **Attachment B** that is within its possession, custody, or control. Because the warrant will be served on **AT&T**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

29.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed for a period of one month from the date the requested warrant is issued, or until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to

all of the targets of the investigation. Accordingly, there is good cause to seal these documents as their premature disclosure may jeopardize this investigation.

Respectfully submitted,

**James Wren**
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this 5th day of January, 2024.

SHON T. ERWIN
United States Magistrate Judge

## **ATTACHMENT A**

### **Property to Be Searched**

1. The cellular telephone assigned call number **580-614-1699** whose wireless service provider is **AT&T** (the "Provider"), a company that accepts process at **National Compliance Center, 11760 US Hwy 1, Suite 300, North Palm Beach, FL 33408**.

2. Records and information associated with the **Subject Account** that is within the possession, custody, or control of the Provider.

# ATTACHMENT B

## Particular Things to Be Seized

I.  **Information to be Disclosed by the Provider**

To the extent that the information described in **Attachment A** is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the **Subject Account** listed in **Attachment A**:

a. The following information about the customers or subscribers associated with the **Subject Account** for the time period July 1, 2023 to the present:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long-distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records;

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Subject Account**, including:

1. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

2. information regarding the cell tower and antenna face (also known as "sectors" through which the communication were sent and received; to include the cell tower roundtrip network measurements from tower to device and back to tower, commonly referred to as Timing Advance data (RTT, PCMD, TrueCall, LOCDBOR, etc.).

b. The following information about the customers or subscribers associated with the **Subject Account** for a period of 10 days from the issuance of the warrant, including:

i. Names (including subscriber names, user names, and screen names);

ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii. Local and long-distance telephone connection records;

iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v. Length of service (including start date) and types of service utilized;

vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity

2

        Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

c.    Prospective information about the location of the cellular phone associated with the **Subject Account** for a period of 45 days (during all times of day and night) from the issuance of the warrant, including:

    i.    E-911 Phase II data;

    ii.    GPS data to include cell tower sector information;

    iii.    Latitude-longitude data;

    iv.    Other precise location information, including engineering data to include but not limited to RTT records, PCMD records, Location Database of Records (LOCDBOR) and/or NELOS records, TrueCall records, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.); and

    v.    Pen Register / Trap and Trace device with prospective cell site information or data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the **Subject Account** during any voice, SMS, and/or data transmission, including but not limited to engineering data which would include RTT records, PCMD records, Location Database of Records (LOCDBOR) and/or NELOS records, TrueCall records.

## II.     Information to Be Seized by the Government

All information described above in Section I that would assist and aid in the location and apprehension of **NEALIS** as well any evidence of violations of **922(g)(1)**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by **AT&T** in order to locate the things particularly described in this Warrant.

## ATTACHMENT C

## 18 U.S.C. § 3122 Certification

In support of this application, and pursuant to 18 U.S.C. § 3122, I state that I am an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure. I certify that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by the Investigating Agency of the Target Subject for violation(s) of the Target Offense(s).

I declare under penalty of perjury under the laws of the United States of America that the foregoing paragraph is true and correct.

_1/4/2024_  
DATE

_David R. Nichols_  
Assistant United States Attorney